# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# JOHNSTOWN DIVISION

|  |  |  |
|---|---|---|
| VIKTOR VIKTOROVICH SHNEGELBERGER, | ) ) ) ) | Civil Action No. 3:25-cv-0491 |
| Petitioner, | ) ) ) | |
| vs. | ) ) | United States District Judge Stephanie L. Haines |
| LEONARD ODDO, Warden, Moshannon Valley Processing Center; TODD LYONS, ICE Director; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, | ) ) ) ) ) ) ) ) | United States Magistrate Judge Christopher B. Brown |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

**Christopher B. Brown, United States Magistrate Judge**

## I.      Recommendation

Presently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed pro se by Petitioner, Viktor Viktorovich Shnegelberger ("Shnegelberger"), an immigration detainee, detained at Moshannon Valley Processing Center, an immigration detention center located in the Western District of Pennsylvania.  ECF No. 1.

Shnegelberger is a native and citizen of Tajikistan, ECF No. 12-1 at 4, and is subject to a final order of removal to Tajikistan.  *Id.* at 22.  Shnegelberger was re-detained by ICE on November 20, 2025, when he reported to DHS for a regularly scheduled check-in appointment.  ECF No. 12-2, ¶ 33.  At that appointment, he was arrested and taken into ICE custody and his Order of Supervision ("OSUP")

1

revoked.  It is unclear from the record when Shnegelberger was transferred to Moshannan Valley Processing Center, but it is undisputed he has remained in ICE custody since his arrest on November 20, 2025.

For the reasons stated below, it is respectfully recommended the petition be granted and Respondents be ordered to release Shnegelberger from custody, subject to and in accordance with the conditions of his preexisting Order of Supervision.

## II.    Report

### A.    Relevant Background

#### 1.    Shnegelberger Arrives in the United States and is Subject to Initial Removal Proceedings

Shnegelberger was born in Kazakhstan, but left that country when he was three years old and spent his childhood in Tajikistan.  ECF No. 1 at 2; ECF No. 12-1 at 4.  He and his mother entered the United States at New York, New York, on December 3, 2007.  ECF No. 12-2, ¶ 2.  He was sixteen years old at the time and entered on a visitor's B-2 visa.  *Shnegelberger v. Attorney General*, 742 F. App'x 685, 686 (3d Cir. 2018).  He became a lawful permanent resident six months later in June 2008 based on his mother's marriage to a U.S. citizen.  *Id.*; *see also* ECF No. 12-2, ¶ 3.

In January 2010, Shnegelberger was arrested for possession of marijuana and drug paraphernalia.  ECF No. 1, at 2.  He pled guilty to the charges and was sentenced to one year probation.  *Shnegelberger*, 742 F. App'x at 686; ECF No. 12-2, ¶ 4.  In April 2015, he committed additional drug-related offenses, pled guilty to

those charges, and received a sentence of 72 hours to 6 months confinement for a DUI: Controlled substance – combination of alcohol/drugs conviction and one year probation for a possession of cocaine conviction. *Shnegelberger*, 742 F. App'x at 686; ECF No. 1 at 2; ECF No. 12-2, ¶ 5. As a result of his cocaine possession conviction, DHS initiated removal proceedings on November 14, 2016, and two days later ICE took Shnegelberger into custody. ECF No. 12-2, ¶¶ 5, 6. On June 7, 2017, an Immigration Judge ordered Shnegelberger's removal to Tajikistan. ECF No. 12-1 at 22. Shnegelberger appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), who dismissed the appeal on November 14, 2017. ECF No. 12-2, ¶ 10. Shnegelberger then filed a Petition for Review with the Court of Appeals for the Third Circuit, who in August 2018 denied in part and dismissed in part the appeal. *See Shnegelberger*, 742 F. App'x at 686. While the Petition for Review was pending before the Court of Appeals, Shnegelberger was released on January 18, 2018, from ICE detention on a $7,000 bond. ECF No. 12-2, ¶ 12.

Four months later, on April 16, 2019, after exhausting all forms of relief, Shnegelberger turned himself back into ICE custody. *Id.*, ¶¶ 16, 17. The following day, Shnegelberger, through counsel, filed a Motion to Reopen and a Motion to Stay Removal with the BIA. *Id.*, ¶ 17. On August 28, 2019, the BIA denied Shnegelberger's motion to reopen, *id.*, ¶ 18, and on September 11, 2019, Shnegelberger filed a second Petition for Review with the Court of Appeals again seeking a temporary stay of removal. *Id.*, ¶ 19. His request for a temporary stay was granted on September 12, 2019. *Id.* About two months later, on November 4,

3

2019, Shnegelberger received a bond hearing and, the next day, he was released from ICE custody on a $12,000 bond. *Id.*, ¶ 21. The following day, the Court of Appeals vacated the temporary stay of removal entered on September 12, 2019, and denied Shnegelberger's request for a stay of removal. *Id.*, ¶ 22. "From November 22, 2019, through July 29, 2022, [Shnegelberger] filed another series of motions and appeals seeking additional review of his immigration status and removal." ECF No. 12 at 3 (citing ECF No. 12-2, ¶¶ 23-31). On November 10, 2020, the Court of Appeals issued another administrative temporary stay of removal. ECF No. 12-2, ¶ 27. Eight months later, on July 20, 2021, the Court of Appeals vacated its 2020 temporary stay of removal and again denied Shnegelberger a full stay of removal. *Id.*, ¶ 28.

According to Shnegelberger, during his two previous detentions, ICE attempted removal to Tajikistan, but could not obtain a travel document and he was released on supervision. ECF No. 1-1, ¶¶ 2, 4. He has complied with all ICE reporting requirements and has not been arrested or accused of committing any crime while on ICE supervision. *Id.*, ¶¶ 5,6.

### 2.    Shnegelberger's 2025 Re-Detention

On November 20, 2025, Schnegelberger arrived at his regularly scheduled check-in appointment with ICE and was immediately arrested and placed into ICE custody. ECF No. 1-1, ¶ 7. Later that day, he was served with a written Notice of Revocation stating "ICE believed there was a 'significant likelihood of removal in the reasonably foreseeable future[.]" *Id.*, ¶ 8.

Eighteen days later, on December 8, 2025, ICE asked Schnegelberger to complete a travel document application, which was submitted three days later to the Tajikistan consulate.  ECF No. 12-2, ¶¶ 36, 37.  On December 16, 2025, Schnegelberger appeared for an interview with the Tajikistan Embassy.  *Id.*, ¶ 39. On December 18, 2025, ICE requested an update on the issuance of a travel document from the Consulate.  *Id.*, ¶ 40.  A response is allegedly pending.  *Id.* Respondents contend "[b]ecause Tajikistan has not denied Petitioner's citizenship and has not declined to issue a travel document to Petitioner, Petitioner's removal to Tajikistan remains significantly likely in the reasonably foreseeable future."  *Id.*, ¶ 41.  "Alternatively, should Tajikistan decline to issue a travel document, ERO will refer his case to HQ/RIO to obtain authorization for a third country removal via the Department of State."  *Id.* ¶ 42.  As of April 20, 2026, Respondents still had not obtained travel papers for Schnegelberger.  ECF No. 16.  And as of the date of this Report and Recommendation, no additional updates have been provided to the Court.

## B.    Federal Habeas Proceedings

On December 8, 2025, Schnegelberger pro se filed the instant Petition for Writ of Habeas Corpus.  ECF No. 1.  Respondents filed an opposition, with various exhibits, ECF No. 12, to which Schnegelberger filed a reply.  ECF No. 13. Schnegelberger argues (1) his re-detention violates his procedural due process rights for failing to promptly provide an informal interview and timely written notice of revocation in violation of federal regulations and (2) his re-detention

5

amounts to indefinite detention and violates his substantive due process rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See generally* ECF No. 1 at 5-8. Respondents counter (1) this Court does not have jurisdiction to adjudicate Schnegelberger's procedural due process claims and (2) Schnegelberger has not met his burden under *Zadvydas* to show that ICE will not be able to remove him in the reasonably foreseeable future. *See generally* ECF No. 12 at 7-11. The matter is fully briefed and ripe for disposition.

At the time the Petition and Response were filed, Schnegelberger's detention had not exceeded the six-month presumptively reasonable period set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001). However, as of the date of the issuance of this Report and Recommendation, Schnegelberger's current detention has now exceeded that six-month mark and Respondents have not reported any progress suggesting they are any closer to removing him to Tajikistan or have requested authorization to remove him to a third country. *See* ECF No. 16. For the reasons below, it is respectfully recommended the petition be granted and Schnegelberger be released from custody, subject to and in accordance with the conditions of his preexisting Order of Supervision.

### C.    Jurisdiction

Title 28, United States Code, § 2241, allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" *Id.*, § 2241(c)(3). This Court has jurisdiction to hear the merits of this case under that statute. *Zadvydas*, 533 U.S. at 688 ("We conclude that § 2241

6

habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). *See also Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025), *reconsideration denied*, 2025 WL 3030692 (W.D. Pa. Oct. 30, 2025) (holding that 8 U.S.C. § 1252(g) did not strip the Court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

The Supreme Court of the United States has explained "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief applies to petitioners seeking relief from executive detention but not to petitioners seeking to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116-120 (2020). The Court has jurisdiction in this case because Shnegelberger is contesting his detention and the violation of his due process rights, *not* the execution of his order of removal. *See also Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297-99 (3d Cir. 2020) (holding judicial review barred because re-detention was part of the process of removing petitioner back to Bangladesh, while challenges to the length of a noncitizen's confinement are not directly about removal). Thus, 8 U.S.C. § 1252 does not bar the Court's review.

### D.    Discussion[1]

In *Zadvydas,* the Supreme Court interpreted § 1231(a)(6) to limit post-removal detention to a period "reasonably necessary to bring about that alien's removal from the United States."  533 U.S. at 689.  The Supreme Court found that post-removal detention for six months is "presumptively reasonable," but beyond those six months, if removal is no longer reasonably foreseeable, continued detention becomes unauthorized.  *Id*. at 699.

That said, the expiration of six months does not entitle every noncitizen to be released.  Rather, the government may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists.  *Id*. at 701.  Accordingly, under *Zadvydas* the noncitizen has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]"  *Id*. at 701.  Once the noncitizen provides such "good reason," the burden shifts to the government to rebut the noncitizen's allegations.  *Id*.  No clear guidance exists to aid courts in making the determination as to whether a significant likelihood of removal in the reasonably foreseeable future exists.  Ultimately, determining what the "reasonably foreseeable future" is requires a factual determination to be undertaken by the habeas court looking into the circumstances and detention length of each individual petitioner.  But, the

---

[1]    Because the undersigned has concluded Schnegelberger's detention is no longer authorized by 8 U.S.C. § 1231, there is no need to address Schnegelberger's alternative arguments. ECF No. 1, at 10.

8

reasonableness of the detention shrinks as the time of post-removal confinement grows. *Zadvydas*, 533 U.S. at 701.

At the time Schnegelberger filed his petition, he had been in ICE custody 18 days (November 20, 2025 – December 8, 2025). Respondents, in their Response, argue Schnegelberger's claim is premature under *Zadvydas* as Schnegelberger's detention was within the presumptively six-month reasonable time period.[2] At the time of the issuance of this Report and Recommendation, however, Schnegelberger now has been detained for over 6 months, outside the "presumptively" reasonable time period without being successfully removed, and, as a result, *Zadvydas* applies.

Under *Zadvydas,* once a petitioner has articulated a "good reason to believe" that removal is unlikely in the reasonably foreseeable future, the burden shifts to the government to rebut that showing. *Zadvydas*, 533 U.S. at 701. Schnegelberger has offered such articulation. He contends Tajikistan refused to issue travel documents for him during his two previous detentions and there is no indication Tajikistan has changed its position now. ECF No. 1 at 7. The undersigned concludes this is enough to find Schnegelberger has met his burden.

The question then becomes whether Respondents have come forward with sufficient evidence to "rebut that showing." *Zadvydas*, 533 U.S. at 701. The record before the Court is sparse. Respondents seek to rebut Schnegelberger's showing by

---

[2]    In a re-detention case, the question arises when did the presumptively reasonable six-month detention period pursuant to *Zadvydas* begin. That issue need not be addressed as Schnegelberger's current detention has now exceeded the presumptively reasonable six-month detention period under *Zadvydas.*

9

resting entirely on a *pending* travel document request made over five months ago in December 2025.  The undersigned finds this claim unavailing.  Respondents have provided no evidence indicating whether Tajikistan will accept, or even is considering accepting, Schnegelberger.  It clearly has not done so in the past, and it is unclear it will do so in the future now that it has been asked again.  A mere possibility of removal at some unknown time will not suffice under *Zadvydas* to prove there is a significant likelihood that removal will occur in the reasonably foreseeable future.  *See Abdel-Muhti v. Ashcroft,* 314 F. Supp. 2d 418, 426 (M.D. Pa. 2004).  Further, although Respondents state "[a]lternatively, ERO intends to seek authorization for removal to a different country," it has provided no evidence that it has sought such authorization or provided a time frame for when ERO intends to seek such authorization.  As it currently stands, the record leaves substantial uncertainty regarding whether there is a "significant likelihood" that Schnegelberger will be removed to Tajikistan (or elsewhere) in the "reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.

Here, at least on the current record, the undersigned concludes Schnegelberger has articulated a "good reason to believe" that his removal is unlikely in the reasonably foreseeable future and the government has not rebutted that showing.

## III.    Conclusion

Schnegelberger is not before the Court contesting Respondents' right to remove him.  He is merely asking to be placed back on supervision pending his removal.

For all the foregoing reasons, it is respectfully recommended the petition be granted and Respondents be directed to release Schnegelberger from custody subject to and in accordance with the conditions of his preexisting Order of Supervision.

Any party is permitted to file written specific Objections to this Report and Recommendation to the assigned United States District Judge.  In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and LCvR 72.D.2, Petitioner, because he is a non-electronically registered party, must file written objections, if any, to this Report and Recommendation by **June 12, 2026**.  Respondents, because they are electronically registered parties, must file objections, if any, by **June 5, 2026.** The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (quoting *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983)).  *See also Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error).

DATED this 22nd day of May, 2026.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge


cc:    Viktor Viktorovich Shnegelberger
A #087-297-628
Moshannon Valley Processing Center
SPECIAL MAIL-OPEN ONLY IN PRESENCE OF INMATE
555 Geo Drive
Philipsburg, PA 16886
(via U.S. First Class Mail)

Raymond Stelzer
United States Attorney's Office
(via ECF electronic notification)